# Exhibit A

IN THE COURT OF COMMON PLEAS OF
WESTMORELAND COUNTY, PENNSYLVANIA

BARBARA CHASE,

    *Plaintiff,*

v.

WELLS FARGO HOME
MORTGAGE, INC.,

    *Defendant.*

CIVIL DIVISION

**ELECTRONICALLY FILED**

Case No.: 22C102268

**PROOF OF SERVICE OF
WRIT OF SUMMONS**

Filed on Behalf of Plaintiff:
Barbara Chase

Counsel of Record for this Party:
**THE WORKERS' RIGHTS LAW
GROUP, LLP**

Kyle H. Steenland, Esq.
Pa. I.D. No. 327786

The Workers' Rights Law Group, LLP
Foster Plaza 10
680 Andersen Drive, Suite 230
Pittsburgh, PA 15220

Telephone:    (412) 910-9592
Fax No.:    (412) 910-7510
Email: kyle@workersrightslawgroup.com

*03/16/2023 10:16 AM Westmoreland County    22C102268*

**IN THE COURT OF COMMON PLEAS OF**
**WESTMORELAND COUNTY, PENNSYLVANIA**

| | |
|---|---|
| BARBARA CHASE, | CIVIL DIVISION |
| *Plaintiff,* | |
| v. | **ELECTRONICALLY FILED** |
| WELLS FARGO HOME MORTGAGE, INC., | Case No.: 22C102268 |
| *Defendant.* | |

**AFFIDAVIT OF SERVICE OF WRIT OF SUMMONS**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | |
| | : | §§ |
| COUNTY OF WESTMORELAND | : | |

**AFFIDAVIT**

I, Kyle H. Steenland, Esquire, of The Workers' Rights Law Group, LLP, hereby swear and affirm that on August 12, 2022, I served a true and correct copy of the Writ of Summons, by way of U.S. Certified Mail, Electronic Return Receipt Requested, upon the following organization (See attached **Exhibit A**, the "Certified Mail Receipt"):

Wells Fargo Home Mortgage, Inc.
c/o Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

Date: March 16, 2023

By: */s/ Kyle H. Steenland*
    Kyle H. Steenland (Pa. I.D. No. 327786)

The Workers' Rights Law Group, LLP
Foster Plaza 10
680 Andersen Drive, Suite 230
Pittsburgh, PA 15220
Telephone: (412) 910-9592
Fax: (412) 910-7510
kyle@workersrightslawgroup.com

*Counsel for Plaintiff, Barbara Chase*

03/16/2023 10:16 AM Westmoreland County   22CI02268

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of March 15, 2023, a true and correct copy of the

foregoing Proof of Service was served via first class mail upon the following:

Wells Fargo Home Mortgage, Inc.
c/o Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP,
LLP**

Date: March 16, 2023

By: */s/ Kyle H. Steenland*
Kyle H. Steenland (Pa. I.D. No. 327786)

The Workers' Rights Law Group, LLP
Foster Plaza 10
680 Andersen Drive, Suite 230
Pittsburgh, PA 15220
Telephone: (412) 910-9592
Fax: (412) 910-7510
kyle@workersrightslawgroup.com

*Counsel for Plaintiff, Barbara Chase*

03/16/2023 10:16 AM Westmoreland County    22CI02268

# EXHIBIT A

**Tracking Number:** 70203160000223465681

Your item was picked up at a postal facility at 12:22 pm on August 12, 2022 in WILMINGTON, DE 19808.

**USPS Tracking Plus® Available** ⌄

Status

⊘ **Delivered, Individual Picked Up at Postal Facility**

August 12, 2022 at 12:22 pm
WILMINGTON, DE 19808

**IN THE COURT OF COMMON PLEAS OF
WESTMORELAND COUNTY, PENNSYLVANIA**

BARBARA CHASE,

      *Plaintiff,*

   vs.

WELLS FARGO HOME
MORTGAGE, INC.,

      *Defendant.*

CIVIL DIVISION

**ELECTRONICALLY FILED**

Case No.: 22CI02268

**COMPLAINT IN CIVIL ACTION**

Filed on Behalf of Plaintiff:
Barbara Chase

Counsel of Record for this Party:
**THE WORKERS' RIGHTS LAW
GROUP, LLP**

Kyle H. Steenland, Esq.
Pa. I.D. No. 327786

The Workers' Rights Law Group, LLP
Foster Plaza 10
680 Andersen Drive, Suite 230
Pittsburgh, PA 15220

Telephone:    (412) 910-9592
Fax No.:      (412) 910-7510
Email: kyle@workersrightslawgroup.com

03/10/2023 03:16 PM Westmoreland County   22CI02268

## NOTICE TO DEFEND

**YOU HAVE BEEN SUED IN COURT.** If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. If you do not have a lawyer, go to or telephone the office set forth below. This office can provide you with information about hiring a lawyer. IF YOU CANNOT AFFORD TO HIRE A LAWYER, this office may be able to provide you with information about agencies that may offer legal service to eligible persons at a reduced fee or no fee:

LAUREL LEGAL SERVICES, INC.
16 EAST OTTERMAN STREET
GREENSBURG, PENNSYLVANIA 15601
TELEPHONE: 1-800-253-9558

IF YOU FAIL TO FILE THE RESPONSE DESCRIBED IN THE NOTICE TO DEFEND, A JUDGMENT FOR THE AMOUNT CLAIMED IN THE COMPLAINT MAY BE ENTERED AGAINST YOU BEFORE THE HEARING. DUTY TO APPEAR AT ARBITRATION HEARING IF ONE OR MORE OF THE PARTIES IS NOT PRESENT AT THE HEARING, THE MATTER MAY BE HEARD AT THE SAME TIME AND DATE BEFORE A JUDGE OF THE COURT WITHOUT THE ABSENT PARTY OR PARTIES. THERE IS NO RIGHT TO A TRIAL DE NOVO ON APPEAL FROM A DECISION ENTERED BY A JUDGE.

NOTICE: You must respond to this complaint within twenty (20) days or a judgment for the amount claimed may be entered against you before the hearing. If one or more of the parties is not present at the hearing, the matter may be heard immediately before a judge without the absent party or parties. There is no right to a trial de novo on appeal from a decision entered by a judge.

03/10/2023 03:16 PM Westmoreland County   22CI02268

## IN THE COURT OF COMMON PLEAS OF
## WESTMORELAND COUNTY, PENNSYLVANIA

|  |  |  |
|---|---|---|
| BARBARA CHASE, | ) | |
| | ) | |
| *Plaintiff,* | ) | **Case No.** 22CI02268 |
| | ) | |
| vs. | ) | |
| | ) | |
| WELLS FARGO HOME | ) | |
| MORTGAGE, INC., | ) | |
| | ) | |
| *Defendant.* | ) | **JURY TRIAL DEMANDED** |
| | ) | |

### COMPLAINT IN CIVIL ACTION

Plaintiff, Barbara Chase, by and through the undersigned counsel, files the within Complaint in Civil Action, averring as follows:

### PARTIES

1.      Plaintiff, Barbara Chase (hereinafter "Plaintiff"), is an adult individual who currently resides at 614 Wirsing Avenue, Greensburg, Pennsylvania 15601.

2.      Defendant, Wells Fargo Home Mortgage, Inc. (hereinafter, "Defendant"), is a Pennsylvania foreign business corporation, whose domiciled state is California, with retail operations located at 409 Broad Street, Suite 210, Sewickley, Pennsylvania 15143.  Defendant has a commercial registered agent of CT Corporation System with an unrecorded principal place of business.

### JURISDICTION AND VENUE

3.      Jurisdiction is proper in this Court pursuant to 42 Pa.C.S. § 931(a) which imbues the courts of common pleas with unlimited original jurisdiction over all actions cognizable by law.

3

4.    Plaintiff brings this lawsuit under the Fair Labor Standards Act 29 U.S.C. § 206 (hereinafter, "FLSA"), the Pennsylvania Minimum Wage Act of 1968, 43 P.S. § 333.101, *et seq.*, (hereinafter, the "MWA"), the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.* (hereinafter, the "WPCL"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (hereinafter, "Title VII"), and the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* (hereinafter, the "PHRA").[1]

5.    Accordingly, jurisdiction is properly vested in this Court because Plaintiff asserts claims originating from statutory causes of action that are within the jurisdiction of the courts of common pleas, and no other court has exclusive jurisdiction over the claims and/or causes of action asserted herein.

6.    Venue is proper in the Court of Common Pleas of Westmoreland County pursuant to Pa. R.C.P. 2179(a)(3), because Westmoreland County, Pennsylvania, is the geographic jurisdiction wherein the causes of action alleged herein transpired and arose, and Pa. R.C.P. 2179(a)(4), because Westmoreland County, Pennsylvania, is the county wherein the transactions and occurrences underlying the causes of action asserted herein occurred.

7.    Moreover, Plaintiff has satisfied all procedural and administrative requirements set forth in 29 U.S.C. § 626 and 42 U.S.C. § 2000e-5 in that:

a. On or about June 30, 2022, Plaintiff filed a timely administrative complaint alleging disability discrimination with the Equal Employment Opportunity Commission (hereinafter, the "EEOC").

b. On or about December 12, 2022, Plaintiff received permission for the right to sue from the EEOC, wherein Plaintiff was afforded 90 days within which to timely file an action in federal or state court. With the filing of the instant Complaint, Plaintiff has hereby satisfied that procedural requirement.

---

[1] Notably, Pennsylvania courts interpret the applicable provisions of the PHRA in accord with their counterpart provisions in Title VII. See *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996); *Doe v. Triangle Doughnuts, LLC*, 472 F. Supp. 3d 115, 138 (E.D. Pa. 2020).

8.      A true and correct copy of the Notice of Determination issued by the EEOC is attached hereto, made a part hereof, and marked as **Exhibit A**.

### GENERAL ALLEGATIONS

9.      In June 2020, Plaintiff commenced her employment with Defendant as a "Mortgage Loan Processor" until Defendant eliminated her position in December 2022.

10.      In that role, Plaintiff's job duties primarily required her to act as a facilitator and liaison between Defendant and its customers and provide support with respect to the customers' applications for loans up to and including the moment of closing for said loans.

11.      Defendant compensated Plaintiff at an hourly rate of $22.50 and provided Plaintiff with incentive bonuses for workplace performance.  Specifically, Plaintiff's incentive bonuses were awarded where a loan to which Plaintiff worked on was "closed" and were ultimately extended by Wells Fargo.

12.      At all times relevant hereto, Plaintiff was classified as a "non-exempt" employee pursuant to the FLSA, the MWA, and/or the WPCL.

13.      When Defendant hired Plaintiff, it was their common understanding that Plaintiff would work remotely and from her personal residence.  In large part, this employment arrangement was due to the novel COVID-19 pandemic.  At all times relevant hereto, Plaintiff was able to successfully perform her tasks to Defendant's satisfaction while in a remote capacity working from her personal residence.

14.      During the onboarding process, Defendant assigned Plaintiff to work as part of the team led by Manager Tina Makin (hereinafter, "Ms. Makin").  Significantly, under the tutelage of

5

Ms. Makin, Plaintiff had a total of twenty (20) to twenty-five (25) home mortgage loans in her loan management system at any given time (hereafter, the "Pipeline").

15.    In accordance with the internal protocol of Defendant, Plaintiff submitted a completed timesheet at the end of every week that documented and recorded the total hours that she worked during the week.

16.    Per the policy of Defendant, employees were provided with two fifteen (15) minutes of unpaid personal rest time in a workday (hereinafter, the "Unpaid Breaks"). Notably, Defendant trained Plaintiff specifically to record the two fifteen-minute breaks onto her timesheet regardless of whether Plaintiff had utilized the break time or whether Plaintiff was forced to work through said breaks. At the end of the payroll week, the corresponding Unpaid Breaks were deducted from Plaintiff's paycheck.

17.    At the outset of Plaintiff's employment, Plaintiff's workload dictated that she would work through the Unpaid Breaks and correspondingly she did not record them onto her timesheet. At that time, Ms. Makin commanded Plaintiff to record the unused Unpaid Breaks on her timesheet to which Plaintiff was forced to do so.

18.    At all times relevant hereto, Plaintiff's workload continually forced Plaintiff to work through the Unpaid Breaks and her job required that she constantly be available to handle the various needs of Defendant's customers.

19.    As such, throughout the course of Plaintiff's employment, and irrespective of the Unpaid Breaks, Plaintiff consistently worked in excess of forty (40) hours per week given the intense nature of Plaintiff's workload. On an average, and throughout the two and one-half years

6

that Plaintiff was employed with Defendant, Plaintiff worked through four fifteen-minute Unpaid Breaks per week.

20.     Although Plaintiff routinely worked an additional hour throughout the workweek, Defendant, by and through Ms. Makin, would unilaterally and without Plaintiff's consent alter Plaintiff's timesheet to falsely reflect that Plaintiff enjoyed the Unpaid Breaks for that relevant payroll period for purposes of calculating Plaintiff's wages and paycheck (hereinafter, the "Break Time Deduction Practice").

21.     Given the time associated and deducted from Plaintiff's paycheck by and through the Break Time Deduction Practice constituted hours worked in excess of forty (40) in a seven day period, Plaintiff was entitled to the corresponding time at an overtime rate of pay pursuant to the FLSA and the MWA.

22.     Between October 2020 and October 2021, Defendant awarded Plaintiff with several performance-based monetary bonuses because Plaintiff had completed an exceptional, high volume of loans allocated to her within the Pipeline.  Significantly, the above-mentioned bonuses were only possible because of the number of loans that Ms. Makin assigned to Plaintiff within the Pipeline.  The number of loans Plaintiff was assigned within the Pipeline correlated to Plaintiff's ability to receive the corresponding incentive bonuses tied to whether said loan ultimately came to fruition.

23.     In or around October 2021, Ms. Makin departed her employment with Defendant, and a portion of her team, including Plaintiff, was assigned to Manager Crystal Spell (hereinafter, "Ms. Spell").

24.     On November 23, 2021, personnel from Defendant sent Plaintiff an electronic mail communication, stating that Defendant was aggressively "encouraging" its employees to get vaccinated against the COVID-19 virus (hereinafter, the "Mandate").

25.     In December 2021, Defendant converted the Mandate into a mandatory condition for continued employment, requiring that all its employees obtain vaccination(s) from COVID-19.

26.     In a digital meeting between Plaintiff, her coworkers, and Ms. Spell, Plaintiff in adherence to her religious practice, taught by the Presbyterian Church, expressed her view that COVID-19 vaccinations were inconsistent with her faith.

27.     More specifically, Plaintiff informed her coworkers and Ms. Spell that, according to her sincerely held religious practices, Plaintiff believed that COVID-19 vaccinations contained fetal cellular tissues or other ingredients or compounds that could not be injected into her blood stream.

28.     Plaintiff then submitted a religious accommodation request, seeking an exemption from the Mandate (hereinafter, the "Religious Accommodation Request").

29.     Immediately thereafter, Defendant, by and through Ms. Spell, unilaterally and without lawful justification reduced Plaintiff's Pipeline by approximately fifty percent (50%).

30.     Significantly, performance and quota bonus payments were directly related and correlative to the number of loans in Plaintiff's Pipeline.  Ultimately, the drastic reduction in the Pipeline, effectuated by Ms. Spell, had an adverse impact on Plaintiff's overall income as well as other terms and conditions of her employment with Defendant.

31.     Further, the above-mentioned reduction in the Pipeline had a negative effect on Plaintiff's metrics within the rubrics that Defendant utilized in reviewing, assessing employee work performance, and awarding merit-based raises.

03/10/2023 03:16 PM Westmoreland County    22CI02268

32.     Tellingly, none of Plaintiff's coworkers or team members experienced a reduction in their respective pipeline systems.

33.     The intentional and retaliatory nature of the conduct displayed by Ms. Spell is further evidenced by the fact that Ms. Spell expressly informed the Human Resources Department of Defendant (hereinafter, "HR Department") that she would not provide Plaintiff with any additional loans to the Pipeline.

34.     Ms. Spell did not deny other coworkers who worked as Mortgage Loan Processors additional loans.  Unlike Plaintiff, Ms. Spell continued to provide said coworkers with new loans to their respective pipelines.

35.     Ms. Spell then excluded Plaintiff (and Plaintiff only) from critical daily team meetings, which denied Plaintiff the opportunity to keep abreast of new developments and strategies in the loan industry, receive feedback from her coworkers and direct supervisor, and obtain training in new computer applications.

36.     Further, Ms. Spell scheduled one-on-one meetings with Plaintiff via Skype, only to either cancel said meetings at the last minute or force Plaintiff to wait prolonged periods of time for her to join the meeting, thereby wasting up to forty (40) minutes of Plaintiff's scheduled work time.

37.     On or about March 2022, Defendant provided Plaintiff with a written warning, reprimanding her for the statistics and metrics associated with the loans in her Pipeline.  As previously alleged, Ms. Spell decreased the amount loans in Plaintiff's Pipeline by 50% and, therefore, was solely responsible for the decline in Plaintiff's numbers vis-à-vis the loans.

9

38.     Upon information and belief, the above-mentioned written reprimand was placed in Plaintiff's personnel file and later served as the foundational basis upon which Defendant decided to eliminate Plaintiff's position.

39.     At the end of April 2022, Defendant provided Plaintiff with a written warning wherein it instructed her to update her vaccination status into Defendant's internal portal.  Upon information and belief, Ms. Spell had access to and did in fact review Plaintiff's vaccination status after she completed it and uploaded it to Defendant's internal portal.

40.     On May 3, 2022, Plaintiff submitted a complaint to the HR Department, contending that the above-delineated conduct of Ms. Spell was discriminatory and retaliatory in nature (hereinafter, "HR Complaint").

41.     Soon thereafter, Ms. Spell assigned Plaintiff an exorbitant number of new loans within the Pipeline.  In so doing, Ms. Spell effectively re-retaliated against Plaintiff by overloading her with so many loans that Plaintiff could not feasibly service them all.

42.     In overloading or flooding Plaintiff with the above-mentioned loans, Ms. Spell once again negatively altered the metrics and statics that Defendant employed to assess the work performance of Plaintiff as Plaintiff's statistics and progress within each loan was adversely reflected within Defendant's metrics.

43.     Furthermore, on numerous occasions, Ms. Spell would take away loans that she had previously assigned to Plaintiff, in further retaliation for filing the HR Complaint, only to later reassign the loans to another individual who would then complete the loan process.  Consequently, Plaintiff did not receive any credit for her performance on said loans and did not receive the corresponding incentive payment.

44.     Upon information and belief, the above-mentioned actions of Ms. Spell following the HR Complaint was the but-for factor that resulted in Plaintiff not receiving any raises, promotions, and/or bonuses and was a substantial contributing factor in support of Defendant's decision to eliminate Plaintiff's position.

45.     On June 23, 2022, the HR Department sent Plaintiff an e-mail instructing her that Defendant's investigation into the HR Complaint remained ongoing.

46.     In December 2022, Defendant informed Plaintiff that it had decided to eliminate her position.

47.     At the time of Plaintiff's departure from Defendant, the HR Department had not resolved its investigation into the HR Complaint.

48.     At the time of Plaintiff's departure from Defendant, the HR Department had not rendered a decision regarding whether to grant Plaintiff her Accommodation Request.

## COUNT I
### FAILURE TO PAY OVERTIME WAGES IN VIOLATION OF THE FLSA
### 29 U.S.C. § 201, *et seq.*

49.     Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

50.     Prefatorily, the FLSA mandates two minimum rates of pay for time "employees" spend dedicated to workplace operations for covered "employers" who constitute an "enterprise engaged in commerce." 29 U.S.C. §§ 206, 207.  Relevant here, the FLSA establishes a heightened rate of one hundred fifty percent multiplied by the employee's base rate of pay for any hours worked in excess of 40 hours within a seven-day period, commonly known as "overtime" or "time and a half" pay. 29 U.S.C. § 207.

51.     The FSLA defines the term "employer" expansively to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

52.     In interpreting this broad phrase, the United States Court of Appeals for the Third Circuit has concluded that liability for violations of the FLSA clearly attaches to the corporate entity itself, here, Defendant, regardless of which employee and/or agent implemented to unlawful policy. See *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 153 (3d Cir. 2014).

53.     Somewhat relatedly, the FLSA defines "employ" to mean "to suffer or permit to work." 29 U.S.C. § 203(g).

54.     Defendant extended a position-for-hire to Plaintiff with specified duties, start-times, and pay-rates. Defendant also possessed ultimate authority and control over Plaintiff and instructed Plaintiff to perform certain tasks for the financial benefit of Defendant. At all times relevant hereto, Defendant exercised a position of power and authority over Plaintiff begetting that of an "employer" role in the relationship.

55.     At all times relevant hereto, Defendant controlled the general terms and conditions of Plaintiff's workplace duties as a Mortgage Loan Processor, dictated the compensation structure and scheme, and mandated the wage keeping practices that Plaintiff was subjected to as a condition of employment.

56.     As a corporate entity responsible for the acts of its employees and/or agents acting withing the scope of their authority, Defendant "permitted" Plaintiff to work and thus "employed" Plaintiff per 29 U.S.C. § 203(g).

57.     As such, Defendant is an "employer" pursuant to 29 U.S.C. § 203(d) vis-à-vis Plaintiff and is therefore liable for violations of the FLSA.

58.     Moreover, pursuant to 29 U.S.C. § 203(s)(1), the mandates of the FLSA apply to an organization/enterprise that satisfies two statutory criteria: (1) it must be engaged in "commerce," and (2) have an annual gross volume of sales not less than $500,000.00.  Id.

59.     Under the FLSA, the term "commerce" is specifically defined to include activities such as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."  29 U.S.C. § 203(b).

60.     In elaborating on the term "commerce," the Third Circuit concluded in *Marshall v. Brunner*, 668 F.2d 748, 751 (3d. Cir. 1982), that an employer's use of out-of-state manufactured equipment which the employer transported in-state for its operations was sufficient to establish that the employer was an "enterprise engaged in commerce" under the FLSA.

61.     Defendant purchased materials, supplies, and equipment necessary and integral for its business operations to and from out-of-state vendors for the express purpose of utilizing said materials, supplies, and equipment for its business operations within the Commonwealth of Pennsylvania and/or some other state.

62.     Additionally, Defendant transmitted and received payments and credits from out-of-state vendors by and through the use of the internet, digital payment processing services which traverse state lines, and through interstate mail via the United States Postal System.

63.     Therefore, Defendant regularly engaged in "commerce" sufficient to satisfy the first prong of 29 U.S.C. § 203(s)(1)(A)(i).

64.     Upon information and belief, Defendant provides consumer and business loans in various counties in the Commonwealth of Pennsylvania, and given the nature, size, scope, and industry of its business, and the frequency of the services sales that it has effectuated throughout Pennsylvania, Defendant had an annual dollar volume of sales in excess of $500,000.00.

13

65.    Therefore, Defendant satisfies the second prong of 29 U.S.C. § 206(s)(1)(A)(i).

66.    Accordingly, Defendant is an "enterprise engaged in commerce" within the purview of 29 U.S.C. § 206(s)(1).

67.    Furthermore, the FLSA defines "employee" to include any individual "employed by an employer" and excludes certain circumstances that are inapplicable to the instant facts, such as individuals employed by the United States Government or the United States Postal Service.  29 U.S.C. § 203(e)(1).

68.    To effectuate the remedial purpose of the FLSA, the Third Circuit interprets "employee" in an "exceedingly broad" manner.  *Safarian v. Am. DG Energy Inc.*, 622 F. App'x 149, 151 (3d Cir. 2015), citing *Martin v. Selker Bros.*, 949 F.2d 1286, 1293 (3d Cir. 1991).

69.    In evaluating whether an individual is an "employee" under the FLSA, the Third Circuit examines the "economic reality" surrounding the workplace relationship and utilizes six factors to determine an individual's employment status:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business.

*Martin*, 949 F.2d at 1293, quoting *Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1382 (3d Cir. 1985).

70.    "Not only should courts examine the circumstances of the whole activity, they should [also] consider whether, as a matter of economic reality, the individuals are dependent upon the business to which they render service."  Id. (internal citation and quotation marks omitted).

71.     At all times relevant hereto, Defendant possessed and, in fact, exercised its right to control Plaintiff's job duties, namely with respect to their decisions and directives concerning where, how, and when Plaintiff was to provide mortgage loan services.

72.     Defendant also exerted significant control over the manner in which Plaintiff performed his workplace duties. Defendant delineated the methodologies involved in the completion of Plaintiff's duties, denoted her expected rate of productivity, and dictated the speed in which Plaintiff was to complete her tasks.

73.     Plaintiff had no personal financial investment in Defendant's operations.  Nor did Plaintiff have an opportunity to obtain extra renumeration based on the exercise of managerial skill.  Plaintiff never worked in a managerial or supervisory capacity.

74.      Instead, Plaintiff was compensated at a determined hourly rate dictated by Defendant.  All the compensation that Defendant disbursed to Plaintiff was derived from hours recorded by Defendant and its wage payment practices, and Plaintiff was dependent on these schemes of compensation for her pay.

75.     The workplace duties of which Plaintiff completed were an integral component of Defendant's day-to-day operations because Plaintiff performed the services necessary for Defendant to service and provide loans to public consumers.

76.     Finally, Plaintiff was completely dependent on Defendant to perform her job duties because Defendant had the clientele, wherewithal, and regulatory licensure necessary to bestow Plaintiff with work as a Mortgage Loan Processor.

77.     Nonetheless, the workplace duties to which Plaintiff completed were an integral component of Defendant's operations, as evidenced by the amount of overtime and energy that Plaintiff expended during her employment with Defendant.

78.     Therefore, Plaintiff is an "employee" for purposes of the FLSA.

79.     Given Defendant's status as an "employer" and an "enterprise engaged in commerce," and Plaintiff's status as an "employee," Defendant was obligated to comply with the overtime rate of pay requirements of the FLSA.

80.     That is, at all times hereto, Defendant was mandated to pay Plaintiff one hundred fifty percent of his corresponding base rate of pay for any time worked beyond 40 hours in a seven-day period. 29 U.S.C. § 207(a)(1).

81.     As previously averred in this Complaint, Plaintiff routinely and regularly worked in excess of forty (40) hours and Plaintiff's workload did not permit her the ability to enjoy the Unpaid Breaks that were ultimately deducted from her compensation by and through the Break Time Deduction Practice.

82.     Instead, as averred above, Defendants implemented the Break Time Deduction Practice and effectuated a scheme that refused to pay Plaintiff any wages whatsoever for the number of hours that Plaintiff worked as a matter of fact.

83.     Consequently, Plaintiff engaged in hours of work that Defendant was legally obligated to compensate her at the overtime rate of pay.

84.     Therefore, Defendants violated 29 U.S.C. § 207 in failing to pay Plaintiff overtime wages.

85.     Otherwise, 29 U.S.C. § 216(b) of the FLSA provides that when an employer violates 29 U.S.C. § 207(a)(1), an employee may collect liquidated damages in an amount equal to the amount of wages that are due and owing and, additionally, an award of attorney's fees.  Id.

86.     An award of liquidated damages pursuant to the FLSA is not penal in nature, but rather, is viewed as a compensatory remedy. *Martin v. Selker Bros.*, 949 F.2d 1286, 1299 (3d Cir. 1991), citing *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 583-84 (1942).

87.     Indeed, the Supreme Court of the United States has opined on the compensatory nature of this remedy, describing it as compensation for the "workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages." *Schonewolf v. Waste Mgmt., Inc.*, No. 17-3745, 2018 BL 92619, at *5 (E.D. Pa. Mar. 19, 2018) citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707-08 (1945).

88.     Furthermore, the award of liquidated damages is mandatory unless an employer can make a "showing of good faith and reasonable grounds for its conduct." *Martin*, 949 F.2d at 1299.

89.     Defendant's willful and knowing actions described hereinabove were the direct and proximate cause that resulted in violations of Plaintiff's rights under the FLSA, deprivation of the statutorily required overtime rate of pay, and the total amount of Plaintiff's damages.

90.     Defendant is unable to meet its burden of establishing "good faith and reasonable grounds" for their violation of Plaintiff's rights. This is demonstrated by Defendant's willful animus in flagrantly disregarding its responsibilities and obligations as an employer.

91.     Therefore, Defendant is liable to Plaintiff for actual damages (lost wages), liquidated damages, as well as reasonable attorney's fees, costs, and expenses pursuant to 29 U.S.C. § 216(b).

92.     As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered tangible economic and pecuniary loss in forms including, but not limited to, the deprivation of lawfully owed wages.

03/10/2023 03:16 PM Westmoreland County    22CI02268

17

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT II**
**FAILURE TO REMIT OVERTIME WAGES IN**
**VIOLATION OF THE MWA**
**43 P.S. § 333.101,** *et seq.*

93.     Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

94.     The MWA, much like its federal law counterpart in the FLSA, mandates a heightened rate of pay for any hour worked in excess of 40 hours per work week.  See 43 P.S. § 333.104.

95.     Specifically, Section 4(c) controls the premium compensation rate for overtime hours and states, in relevant part, that "[e]mployees shall be paid for overtime not less than one and one-half times the employee's regular rate as prescribed in regulations promulgated by the secretary…." 43 P.S. § 333.104(c).

96.     Nearly identical to the pertinent provision of the FLSA, the MWA defines "employer" to include "any association, corporation, individual, partnership," or "any person or group or persons acting, directly or indirectly, in the interest of an employer in relation to any employee." 43 P.S. § 333.103(g).

97.     Analogous to the case law interpreting the FSLA, the definition of "employer" is expansively construed within the MWA to, in essence, render a corporate entity liable per se for violations of the FLSA.  See *Schneider v. IT Factor Prods.*, 2013 BL 341183, at *4 (E.D. Pa. Dec. 10, 2013), citing *Scholly v. JMK Plastering, Inc.*, 2008 BL 141013, at *4 (E.D. Pa. June 25, 2008).

98.     As previously averred, and for the same reasons Defendant is an "employer" for purposes of the FLSA, Defendant is also an "employer" for purposes of the MWA.

03/10/2023 03:16 PM Westmoreland County    2268102232

18

99.    Defendant is also a corporation organized under the laws of the Commonwealth of Pennsylvania, by and through which individuals are employed for a commercial purpose and the financial benefit of Defendant, including Plaintiff, within the state of Pennsylvania.

100.    The MWA defines "employee" to include "any individual employed by an employer." 43 P.S. § 333.103(h).

101.    In line with its FLSA counterpart, the definition of "employ" is broadly defined as to "suffer or permit to work." 43 P.S. § 333.103(f).

102.    In determining whether an individual is an "employee" within the MWA, the Commonwealth Court has held the "economic reality test" utilized within the framework of the FLSA is the applicable standard for making such a determination under the MWA. *Commonwealth v. Stuber*, 822 A.2d 870, 873 (Pa. Cmwlth. 2003).

103.    As previously averred, and for the same reasons Plaintiff is an "employee" for purposes of the FLSA, Plaintiff is also an "employee" for purposes of the MWA.

104.    Consequently, given Defendant's status as an "employer" and Plaintiff's status as an "employee," Defendant was obligated to comply with the overtime wage requirements of the MWA.

105.    However, as averred above, Defendant explicitly refused to pay Plaintiff any wages for the overtime hours that she worked pursuant to the Break Time Deduction Practice.

106.    Therefore, Defendant violated 43 P.S. § 333.104(c).

107.    In addition, the MWA provides for the recovery of attorney's fees and costs when an employer fails to pay an employee in accordance with Section 4(c) of the MWA.

108.    As such, Defendant is liable to Plaintiff for actual damages (lost wages), as well as reasonable attorney's fees, costs, and expenses pursuant to 43 P.S. § 333.113.

03/10/2023 03:16 PM Westmoreland County    272C102268

109.    As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered tangible economic and pecuniary loss in forms including, but not limited to, the deprivation of lawfully owed wages.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT III**
**FAILURE TO REMIT WAGES IN**
**VIOLATION OF THE WPCL**
**43 P.S. § 260.1** *et seq.*

110.    Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

111.    The WPCL provides the employee with a statutory remedy to enforce its rights where an employer breaches its fundamental contractual obligation to pay wages owed to said employee. See *Weldon v. Kraft, Inc.*, 896 F.2d 793, 801 (3d Cir. 1990).

112.    The "contract" between the employer and the employee governs the determination of the specific wages earned by the employee. Id., citing *Sendi v. NCR Comten, Inc.*, 800 F.2d 1138 (3d Cir. 1986).

113.    This statutory remedy created by the WPCL established both a private cause of action to any employee to whom "any type of wages" are owed and bestowed "any court of competent jurisdiction" with the power to maintain such an action.  43 P.S. § 260.9a(b).

114.    The WPCL defines an "employer" to include every person, "association," or "corporation" and, further, "any agent or officer of any [corporation] employing any person in this Commonwealth."  43 P.S. § 260.2a.

20

115.    Defendant is a business "association" and/or "corporation" that employs individuals, including Plaintiff, within the geographic boundaries of the Commonwealth of Pennsylvania and, therefore, is an "employer" under 43 P.S. § 260.2a.

116.    As averred repeatedly throughout this Complaint, Defendant and Plaintiff have effectuated an employment relationship, whereby Plaintiff was an "employee." This factual reality remains true for purposes of the WPCL as well.

117.    The WPCL defines "wages" to include all "earnings of an employee" and further includes within this definition any "fringe benefits or wage supplements." 43 P.S. § 260.2a.

118.    Plaintiff has sufficiently accrued "wages" within the purview of 43 P.S. § 260.2a, because he engaged in the performance of workplace duties for Defendant in exchange for compensation in the form of an hourly rate commensurate with the time Plaintiff expended in performance of said duties.

119.    Defendant has not asserted a dispute over the wages due and owing to Plaintiff and has not provided written notice of conceded or disputed wages associated with Plaintiff pursuant to 43 P.S. § 260.6.

120.    The WPLC imposes a duty on each employer to pay its employees all wages due and owing on established regular paydays (the "Established Payday Procedure"), which is to be designated in advance by the employer. 43 P.S. § 260.3(a).

121.    Defendant's Established Payday Procedure was the disbursement of employee pay on a weekly basis.

122.    Section 260.10 of the WPCL permits an award of liquidated damages equal to 25% of the underlying amount of wages that are due and owing to an employee when an employee fails

to pay the wages that are due and owing within 30 days of the Established Payday Procedure and the employer does not lodge a good faith contest or dispute.

123.     Accordingly, per the above statutory provisions, Defendant was legally obligated to provide Plaintiff with his owed wages when he was not paid those wages for 30 days beyond Defendant's Established Payday Procedure.

124.     By omission, Defendant has refused to pay Plaintiff all wages due and owing to him well beyond 30 days of the date of the Established Payday Procedure.

125.     As previously stated, the wages that were, are, and continue to be owing are those that have resulted from Defendant's implementation and utilization of Overtime Timekeeping Practice No. 1, Overtime Timekeeping Practice No. 2, and the Final Paycheck Overtime Deduction Practice.

126.     To date, Defendant has not paid Plaintiff the above-mentioned wages that are due and owing to Plaintiff. As such, Defendant has violated 43 P.S. § 260.10 in failing to pay owed wages to Plaintiff.

127.     Additionally, Defendant has not asserted (and cannot assert) a good faith contest or dispute as to the amount of Plaintiff's disbursed wages.

128.     Defendant's actions described hereinabove were the direct and proximate cause that resulted in violations of Plaintiff's rights under the WPCL, deprivation of his statutory entitlement to accrued wages, and the total amount of Plaintiff's damages.

129.     Consequently, Plaintiff is entitled to an award of liquidated damages pursuant to 43 P.S. § 260.10.

03/10/2023 03:16 PM Westmoreland County   22CI02268

130. Moreover, 43 P.S. § 260.9a(f) mandates that where a plaintiff obtains a favorable judgment, the plaintiff is entitled, as a matter of right, to an award of attorneys' fees. 43 P.S. § 260.9a(f).

131. As such, Plaintiff is also entitled to reasonable attorney's fees pursuant to 43 P.S. § 260.9a(f) that were incurred as a result of redressing Defendant's conduct described hereinabove.

132. As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered tangible economic and pecuniary loss in forms including, but not limited to, the deprivation of lawfully owed wages.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT IV**
**RETALIATION ON THE BASIS OF RELIGIOUS BELIEFS**
**IN VIOLATION OF TITLE VII AND THE PHRA**
**42 U.S.C. § 2000e, *et seq.*; 43 P.S. § 951, *et seq.***

133. Plaintiff incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

134. "To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that (1) she engaged in protected activity, (2) the employer took a materially adverse action against her, and (3) there was a causal connection between the protected activity and the employer's action." *LeBoon v. Lancaster Jewish Community Center Ass'n*, 503 F.3d 217, 231-32 (3d Cir. 2007).

135. "For retaliation purposes, an adverse employment action is one that would dissuade a reasonable employee from making or supporting a charge of discrimination." *Friel v. Mnuchin*, 474 F. Supp. 3d 673, 686 n.56 (E.D. Pa. 2020).

136.    In December 2021, Plaintiff submitted the Religious Accommodation Request to Defendant, seeking a religious exemption to the Mandate, which is a protected activity for purposes of Title VII.

137.    Immediately thereafter, Ms. Spell obtained express knowledge that the Mandate ran counter to Plaintiff's sincerely held religious beliefs and that Plaintiff had filed the Religious Accommodation.

138.    Less than two weeks later, Ms. Spell reduced Plaintiff's Pipeline by 50%. Thereafter, Ms. Spell stated that she would not assign Plaintiff any more loans to her Pipeline.

139.    As averred hereinabove, said reduction in the Pipeline had a devastating and negative effect on Plaintiff's ability to obtain raises and bonuses.  Ultimately, Ms. Spell penalized Plaintiff in such a manner that any reasonable person in Plaintiff's shoes would be dissuaded from seeking a religious accommodation to protect the freedom of religion granted by Title VII.  See *Friel*, 474 F. Supp. 3d at n.56 and accompanying text.

140.    Given the close temporal proximity that exists from the time Ms. Spell obtained knowledge that Plaintiff filed the Religious Accommodation Request to the time Ms. Spell instituted the adverse employment action, described above, a sufficient causal nexus exists between the two.

141.    Moreover, the religious animosity of Ms. Spell is further reflected by the disparate treatment that Ms. Spell displayed toward Plaintiff, including, but not limited to, singling Plaintiff out and excluding her from daily team meetings and needlessly wasting valuable time that Plaintiff was obligated to spend working.

142. Therefore, Defendant unlawfully retaliated against Plaintiff for exercising her rights under Title VII and, in so doing, violated Title VII. Correspondingly, Plaintiff was damaged as a result of Defendant's conduct.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT V**
**RETALIATION ON THE BASIS OF RELIGIOUS BELIEFS**
**IN VIOLATION OF TITLE VII AND THE PHRA**
**42 U.S.C. § 2000e, *et seq.*; 43 P.S. § 951, *et seq.***

143. Plaintiff incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

144. In early May 2022, Plaintiff submitted the HR Complaint to Defendant. Like the above-mentioned Religious Accommodation Request, the HR Complaint constitutes protected activity for purposes of Title VII.

145. Upon information and belief, the HR Department immediately contacted Ms. Spell and informed her that Plaintiff had filed the HR Complaint and, further, disclosed the substantive content of the HR Complaint.

146. Less than two weeks later, Ms. Spell bombarded Plaintiff with an overload of loans in the Pipeline.

147. Ms. Spell then reassigned said loans away from Plaintiff and to another coworker after Plaintiff had made substantial contributions toward processing and completing the loans.

148. As alleged within this Complaint, the above-mentioned conduct of Ms. Spell deprived Plaintiff of raises and performance bonuses.

03/10/2023 03:16 PM Westmoreland County 22CIU22268

149.     Consequently, Ms. Spell retaliated against Plaintiff to such an extent that any reasonable person in Plaintiff's shoes would be dissuaded from filing an internal discrimination complaint with an employer.

150.     Given the close temporal proximity that exits from the time Ms. Spell acquired knowledge that Plaintiff filed the HR Complaint to the time Ms. Spell committed adverse employment action, a sufficient causal relationship exists between the two.

151.     Ultimately, when viewed cumulatively, Ms. Spell's course of conduct with respect to Plaintiff's Religious Accommodation Request and the HR Complaint resulted in and supported Defendant's decision to eliminate Plaintiff's job as a Mortgage Loan Processor.

152.     Therefore, Defendant, acting by and through Ms. Spell, retaliated against Plaintiff in violation of Title VII and correspondingly damaged Plaintiff.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad dammum* clause of this Complaint, *infra*.

## COUNT VI
### HOSTILE WORK ENVIRONMENT
### IN VIOLATION OF TITLE VII AND PHRA
### 42 U.S.C. § 2000e, *et seq.*; 43 P.S. § 951, *et seq.*

153.     Plaintiff incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

154.     To establish a Title VII hostile work environment claim against one's employer, a plaintiff employee must prove: 1) the employee suffered intentional discrimination because of his/her ethnicity; 2) the discrimination was severe or pervasive; 3) the discrimination detrimentally affected the plaintiff; 4) the discrimination would detrimentally affect a reasonable person in like circumstances and 5) the existence of *respondeat superior* liability.  See, *Mandel v. M & Q*

26

*Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (internal citations omitted); see, also, *Sarullo v. US Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003).

155.   As averred previously, Ms. Spell engaged in a pattern and practice of intentional discrimination against Plaintiff, namely by retaliating against Plaintiff for filing the Religious Accommodation Request and the HR Complaint.

156.   To reiterate, the actions of Ms. Spell not only deprived Plaintiff of raises and bonuses to which she would otherwise be entitled, but also resulted in Defendant deciding to eliminate Plaintiff's position.

157.   In these circumstances, Ms. Spell perpetuated a practice of retaliation that was sufficiently severe or persuasive—a practice that, by any means, had a profound and detrimental effect on the terms and conditions of Plaintiff's employment.

158.   Any reasonable person in Plaintiff's shoes would have experienced and fully appreciated the detrimental effects of the discriminatory practices effectuated by Ms. Spell.

159.   At all times relevant hereto, Defendant had express knowledge of the discriminatory practices that Ms. Spell forced upon Plaintiff.

160.   Therefore, Defendant essentially ratified the conduct of Ms. Spell and, in so doing, condoned a hostile work environment in violation of Title VII and correspondingly damaged Plaintiff.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

### PRAYER FOR RELIEF

For the above-stated reasons, Plaintiff, Barbara Chase, respectfully requests this Honorable Court to enter judgment in her favor, and against Defendant, Wells Fargo Home Mortgage, Inc., and prays for relief as follows:

1. Declare and find that Defendant committed one or more of the following acts:

    i. Violated the FLSA in failing to pay Plaintiff the overtime rate of pay and did so willfully;

    ii. Violated the MWA in failing to pay Plaintiff the overtime rate of pay and did so willfully;

    iii. Violated the Violated provisions of the WPCL in failing to remit wages to Plaintiff and did so willfully;

    iv. Violated Title VII and/or the PHRA in retaliating against Plaintiff for filing the Religious Accommodation Request;

    v. Violated Title VII and/or the PHRA in retaliating against Plaintiff for filing the HR Complaint;

    vi. Violated Title VII and/or the PHRA in creating a hostile work environment on the basis of Plaintiff's religious beliefs;

2. Award compensatory damages, including but not limited to past and future pecuniary and non-pecuniary losses, including suffering, mental anguish, inconvenience, and loss of enjoyment of life;

3. Award equitable relief in form of back pay and front pay;

4. Award lost wages or wages that are otherwise due and owing to Plaintiff;

5. **Award attorney's fees; and/or**

6. Award pre-judgment and continuing interest as calculated by the Court.

28

03/10/2023 03:16 PM Westmoreland County   2223102268

**JURY TRIAL DEMANDED ON ALL ISSUES SO TRIABLE.**

 

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

Date: March 10, 2023          By: _____

                                  Kyle H. Steenland (Pa. I.D. No. 327786)

The Workers' Rights Law Group, LLP
Foster Plaza 10
680 Andersen Drive, Suite 230
Pittsburgh, PA 15220
Telephone: 412.910.9592
Facsimile: 412.910.7510
kyle@workersrightslawgroup.com

*Attorney for Plaintiff, Barbara Chase*

29

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: Attorney for Plaintiff

Signature: _____

Name: Kyle H. Steenland _____

Attorney No. (if applicable): 327786 _____

03/10/2023 03:16 PM Westmoreland County   22CI02268



CERTIFIED MAIL

7021 2720 0000 9381 3740





FP US POSTAGE
$006.85⁰
First-Class - IMI
ZIP 15220

03/16/2023
036B 0011822029



The Workers' Rights Law Group, LLP
Foster Plaza 10
680 Andersen Drive, Suite 230
Pittsburgh, PA  15220
www.workersrightslawgroup.com

WELLS FARGO HOME MORTGAGE, INC.
C/O CORPORATION SERVICE COMPANY
251 LITTLE FALLS DRIVE
WILMINGTON, DE 19808